1  ANDRÉ BIROTTE JR.
   United States Attorney
2  ROBERT E. DUGDALE
   Assistant United States Attorney
3  Chief, Criminal Division
   KEVIN M. LALLY (Cal. State Bar No. 226402)
4  NILI T. MOGHADDAM (Cal. State Bar No. 226636)
   CAMERON L. SCHROEDER (Cal. State Bar No. 255016)
5  Assistant United States Attorneys
   Violent and Organized Crime Section
6       1500 United States Courthouse
        312 North Spring Street
7       Los Angeles, California 90012
        Telephone:  (213) 894-2170/6520/0596
8       Facsimile:  (213) 894-3713
        E-mail: kevin.lally@usdoj.gov
9               nili.moghaddam@usdoj.gov
                cameron.schroeder@usdoj.gov
10
   Attorneys for Plaintiff
11 United States of America

12
                    UNITED STATES DISTRICT COURT
13
             FOR THE CENTRAL DISTRICT OF CALIFORNIA
14

15 UNITED STATES OF AMERICA,      )   No. CR 07-1172(D)-DDP
                                  )
16           Plaintiff,           )
                                  )
17           v.                   )   TRIAL MEMORANDUM
                                  )
18 SERGIO PANTOJA, et al.,        )   [18 U.S.C. § 1962(d):
                                  )   Racketeer Influenced and
19                                )   Corrupt Organizations
                                  )   Conspiracy; 21 U.S.C. § 846:
20                                )   Conspiracy to Possess with
   Defendants.                    )   Intent to Distribute and
21                                )   Distribute Narcotics; 18
                                  )   U.S.C. § 1959(a)(1), (5):
22                                )   Violent Crime in Aid of
                                  )   Racketeering; 18 U.S.C.
23                                )   § 1201(c): Conspiracy to
                                  )   Commit Kidnaping; 18 U.S.C.
24                                )   § 1201(a)(1): Kidnaping; 18
                                  )   U.S.C. § 2: Aiding and
25                                )   Abetting and Causing an Act to
                                  )   be Done]
26                                )
                                  )   Trial Date: February 29, 2012
27                                )   Trial Time: 9:00 a.m.
                                  )
28                                )
   _____  )

1    The United States, by and through its counsel of record,

2  the United States Attorney for the Central District of

3  California, hereby files its trial memorandum for the above-

4  captioned case.

5    The government respectfully requests leave of the Court to

6  supplement or modify this memorandum as may be appropriate.

7  DATED: February 22, 2012        Respectfully submitted,

8                                  ANDRÉ BIROTTE JR.
                                   United States Attorney
9
                                   ROBERT E. DUGDALE
10                                 Assistant United States Attorney
                                   Chief, Criminal Division
11

12                                 _____/s/_____
                                   KEVIN M. LALLY
13                                 NILI T. MOGHADDAM
                                   CAMERON L. SCHROEDER
14                                 Assistant United States Attorneys

15                                 Attorneys for Plaintiff
                                   United States of America
16

17

18

19

20

21

22

23

24

25

26

27

28

I.

STATUS OF THE CASE

A.    Trial is set for February 29, 2012, before the
Honorable Dean D. Pregerson, United States District Court Judge.

B.    The estimated time for trial is four to six weeks.

C.    Defendants Eduardo Hernandez, Vladimir Iraheta,
Leonidas Iraheta, and Javier Perez currently are in custody.

D.    Trial by jury has not been waived.

E.    Defendants Eduardo Hernandez, Vladimir Iraheta,
Leonidas Iraheta, and Javier Perez are charged in the Fourth
Superseding Indictment with RICO conspiracy (count one),
narcotics conspiracy (count two) and violent crimes in aid of
racketeering (counts eleven, sixteen, eighteen, and nineteen).
Defendant Perez is additionally charged with conspiracy to commit
kidnaping (count twenty) and kidnaping (count twenty-one).

II.

APPLICABLE STATUTES

A.    18 U.S.C. § 1962(d)(RICO Conspiracy) (count 1)

1.    Statutory Language

Title 18, United States Code, Section 1962(d) provides in
pertinent part:

> It shall be unlawful for any person to conspire to
> violate any of the provisions of subsection . . . (c)
> of this section.

2.    Applicable Law

a.    RICO Conspiracy Law

There exist three significant ways in which RICO conspiracy
differs from a substantive RICO offense.

1        First, to convict a defendant of RICO conspiracy, the

2   government is not required to prove that the alleged enterprise

3   was actually established, that the defendant was actually

4   associated with the enterprise, or that the enterprise or its

5   activities actually affected interstate commerce.  Instead,

6   because the agreement to commit a RICO offense is the essence of

7   a RICO conspiracy offense, the government need only prove that if

8   the conspiracy offense were completed as contemplated, the

9   enterprise would be established, the defendant would be

10  associated with the enterprise, and the enterprise or its

11  activities would affect interstate commerce.  Salinas v. United

12  States, 522 U.S. 52, 65, 118 S.Ct. 469, 477, 139 L.Ed. 2d 352,

13  367 (1997).

14       Second, to convict a defendant of RICO conspiracy, the

15  government need not prove that individual enterprise members

16  personally had agreed to commit two racketeering acts or had

17  participated in the commission of the actual crimes.  Salinas,

18  522 U.S. at 63 (upholding the sufficiency of a RICO conspiracy

19  conviction of a sheriff's deputy who facilitated scheme whereby

20  his boss received multiple kickbacks from a prisoner in exchange

21  for permitting unauthorized conjugal visits).  The government

22  must prove only that the particular defendant agreed that, at

23  some point during the life of the conspiracy, a member of the

24  conspiracy would commit, on behalf of the conspiracy, at least

25  two related acts of racketeering, with the jury being unanimous

26  as to which type or types of predicate racketeering activity the

27  defendant agreed would be committed.  Salinas, 522 U.S. at 65.

28  As the Salinas Court stated:

1       A conspiracy may exist even if a conspirator does not
agree to commit or facilitate each and every part of
2    the substantive offense.  The partners in the criminal
plan must agree to pursue the same criminal objective
3    (here the operation of the RICO enterprise) and may
divide up the work, yet each is responsible for the
4    acts of each other.  <u>See</u> <u>Pinkerton v. United States</u>,
328 U.S. 640 (1946).  If conspirators have a plan which
5    calls for some conspirators to perpetrate the crime and
others to provide support, the supporters are as guilty
6    as the perpetrators.

7       A conspirator must intend to further an endeavor which,
if completed, would satisfy all the elements of a
8    substantive criminal offense, but it suffices that he
adopt the goal of furthering or facilitating the
9    criminal endeavor.  He may do so in any number of ways
short of agreeing to undertake all of the acts
10   necessary for the crimes completion . . .

11   <u>Id.</u> at 62-65.

12      Third, to convict a defendant of a substantive RICO offense,

13   the government must prove that the defendant personally

14   participated in the operation or management of the enterprise.

15   Such proof, however, is not required to convict a defendant of a

16   RICO conspiracy offense.  Rather, a defendant may be convicted of

17   a RICO conspiracy offense provided that the defendant knowingly

18   agreed to facilitate a scheme which, if completed, would

19   constitute a RICO violation involving at least one conspirator

20   who would participate in the operation or management of the

21   enterprise.  <u>United States v. Fernandez</u>, 388 F.3d 1199, 1230 (9th

22   Cir. 2004) (holding that <u>Salinas</u> rendered the Ninth Circuit's

23   prior decisions requiring that a defendant "conspired to operate

24   or manage the enterprise herself" invalid, and instead holding

25   that "a defendant is guilty of conspiracy to violate 1962(c) if

26   the evidence showed that she knowingly agree[d] to facilitate a

27   scheme which includes the operation or management of a RICO

28   enterprise") (internal quotations omitted).

Under <u>Salinas</u> and its progeny, the government may prove the defendant entered a conspiratorial agreement to violate RICO in two alternative ways: (1) the government may prove that the defendant agreed to commit two overt acts in furtherance of the enterprise or (2) it may prove that the defendant agreed to participate in the conduct of the enterprise with the knowledge and intent that other members of the conspiracy would commit at least two overt acts in furtherance of the enterprise. <u>See</u> <u>United States v. Nguyen</u>, 255 F.3d 1335 (11th Cir. 2001).

RICO conspiracy also differs materially from the general conspiracy statute set forth in 18 U.S.C. § 371. Specifically, while RICO conspiracy incorporates the general law of conspiracy,[1] <u>Salinas</u>, 552 U.S. at 63-65, Congress designed the statute to be broader in scope than a Section 371 conspiracy. As the Fifth Circuit explained:

> We are convinced that through RICO, Congress intended to authorize the single prosecution of a multi-faceted, diversified conspiracy by replacing the inadequate "wheel" and "chain" rationales with a new statutory concept; the enterprise.
>
> . . . RICO helps to eliminate this problem (diverse crimes by apparently unrelated individuals) by creating a substantive offense which ties together these diverse parties and crimes. . . The gravamen of the conspiracy

---

[1] As with proof of any other type of conspiracy, the agreement need not be stated or written, but may be inferred from circumstantial evidence or the defendant's acts pursuant to the scheme. <u>United States v. Diecidue</u>, 603 F.2d 535 (5th Cir. 1979); <u>Glasser v. United States</u>, 315 U.S. 60, 80 (1942). In addition, there is no requirement that the defendant in a RICO conspiracy know the full scope of the conspiracy or even the identity of all the conspirators. <u>United States v. Castro</u>, 89 F.3d 1443, 1451 (11th Cir. 1997); <u>United States v. Sutherland</u>, 656 F.2d 1181, 1190 (5th Cir. 1981).

> charge in this case is not that each defendant agreed
> to commit (a specific crime), it is that each agreed to
> participate, directly and indirectly, in the affairs of
> the enterprise . . . .

United States v. Elliott, 571 F.2d 880, 902 (5th Cir. 1978).  For

example, unlike a Section 371 conspiracy, the government need not

establish that any overt acts were in fact committed.  Salinas,

522 U.S. at 63; United States v. Smith, 413 F.3d 1253, 1265 (10th

Cir. 2005); United States v. Corrado, 286 F.3d 934, 937 (6th Cir.

2002); United States v. Glecier, 923 F.2d 496, 500 (7th Cir.

1991); United States v. Gonzalez, 921 F.2d 1530, 1547-48 (11th

Cir. 1991); United States v. Torres Lopez; 851 F.2d 520, 525 (1st

Cir. 1988); United States v. Persico, 832 F.2d 705, 713 (2d Cir.

1987).  The RICO conspiracy provision, then, is even more

comprehensive than the general conspiracy offense in 18 U.S.C.

§ 371.  Id.

            b.   Enterprise

        As defined by the RICO statute, the term "enterprise"

includes "any individual, partnership, corporation, association,

or other legal entity, and any union or group of individuals

associated in fact although not a legal entity."  18 U.S.C.

§ 1961(4); see Microsoft v. Odom, 486 F.3d 541, 548 (9th Cir.

2007) (a single individual or legal entity can qualify as an

enterprise).  To prove the existence of an association-in-fact

enterprise, such as the one charged in the Indictment, the

government must establish the existence of an ongoing

organization, whether it be formally or informally organized,

acting with a common purpose and acting as a continuing unit.

<u>Id.</u> at 548, 552.[2]  To function as a continuing unit, it is not necessary that every member or associate of the enterprise be involved in each of the acts of racketeering, that the predicate acts be interrelated in any way, or that the membership in the organization remain constant over time.  <u>Id.</u> at 551-52.  Instead, the focus is on whether the associates' behavior consists of ongoing, as opposed to isolated, activity.  <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981); <u>Odom</u>, 486 F.3d at 545-52.

In <u>United States v. Boyle</u>, 129 S.Ct. 2237, 2244 (2009), the Supreme Court held that an association-in-fact enterprise must have a structure and must have "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  The Court

---

[2]  Establishing that the members of the enterprise operated together in a coordinated manner in furtherance of a common purpose may be proven by a wide variety of direct and circumstantial evidence; including, but not limited to, inferences from the members' commission of similar racketeering acts in furtherance of a shared objective, financial ties, coordination of activities, community of interests and objectives, interlocking nature of the schemes, and overlapping nature of the wrongful conduct.  <u>See e.g.</u> <u>United States v. Owens</u>, 167 F.3d 739, 751 (1st Cir. 1999) (members of drug trafficking enterprise provided other members with financial assistance and coordinated transportation of drugs); <u>United States v. Richardson</u>, 167 F.3d 621, 625 (D.C. Cir. 1999)("Additional evidence of [the enterprise's] organization and continuity comes from the robberies' consistent pattern"); <u>United States v. Davidson</u>, 122 F.3d 531, 535 (8th Cir. 1997) ("The length of these associations, the number and variety of crimes the group jointly committed, and Davidson's financial support of his underlings demonstrates an ongoing association with a common purpose to reap the economic rewards flowing from the crimes, rather than a series of ad hoc relationships").

1  further held that the existence of an enterprise is a distinct

2  element "beyond that inherent in the pattern of racketeering

3  activity." Id. at 2245.  The Court stressed, however, that

4  although the pattern does not necessarily establish the

5  enterprise, this does not mean that "the existence of an

6  enterprise may never be inferred from the evidence showing that

7  persons associated with the enterprise engaged in a pattern of

8  racketeering activity." Id.  The Court reiterated its holding in

9  Turkette that "an association-in-fact enterprise is simply a

10  continuing unit that functions with a common purpose." Id.  The

11  Court added:

12      Such a group need not have a hierarchical structure or
        a 'chain of command'; decisions may be made on an ad
13      hoc basis and by any number of methods – by majority
        vote, consensus, a show of strength, etc.  Members of
14      the group need not have fixed roles; different members
        may perform different roles at different times.  The
15      group need not have a name, regular meetings, dues,
        established rules and regulations, disciplinary
16      procedures, or induction or initiation ceremonies.
        While the group must function as a continuing unit and
17      remain in existence long enough to pursue a course of
        conduct, nothing in RICO exempts an enterprise whose
18      associates engage in spurts of activity punctuated by
        periods of quiescence.
19

20  Id. at 2245-2246.

21          c.   Employed by or Associated with the Enterprise

22      A person is "employed by" an enterprise when, for example,

23  the person is on the payroll of the enterprise and performs

24  services for the enterprise, holds a position in the enterprise,

25  or has an ownership interest in the enterprise. See, e.g.,

26  United States v. Gabriele, 63 F.3d 61, 68 (1st Cir. 1995).  A

27  person is "associated with" the enterprise if the person joins

28                                  9

1  with other members of the enterprise and knowingly aids or

2  furthers the activities of the enterprise, or conducts business

3  with or through the enterprise.  See, e.g., United States v.

4  Marino, 277 F.3d 11 (1st Cir. 2002); United States v. Delgado,

5  401 F.3d 290 (5th Cir. 2005).

6            d.   Conducted or Participated in the Affairs of the
               Enterprise

7

8       A particular defendant participates, directly or indirectly,

9  in the conduct of the enterprise's affairs by participating in

10  the operation or management of the enterprise by having some part

11  in directing the enterprise's affairs.  18 U.S.C. § 1962(c); see

12  also Reves v. Ernst & Young, 507 U.S. 170, 163 S.Ct. 163, 122

13  L.Ed. 2d 525 (1993).  For a defendant to participate in the

14  operation or management of the enterprise, the defendant need not

15  exercise significant control over, or within, the enterprise.

16  Reves, 507 U.S. at 179 n.4.  Similarly, the defendant need not

17  have had either a formal position in the enterprise or have had

18  primary responsibility for the enterprise's affairs as "[a]n

19  enterprise is 'operated' not just by upper management but also by

20  lower-rung participants in the enterprise who are under the

21  direction of upper management" or who carry out upper

22  management's orders.  Reves, 507 U.S. at 184; see also Fernandez,

23  388 F.3d at 1228.  Therefore, "all who participate in the conduct

24  of [the] enterprise, whether they are generals or foot soldiers,"

25  can be held legally responsible under the RICO statute.  United

26  States v. Oreto, 37 F.3d 739, 751 (1st Cir. 1994).

27

28                           10

1            e.   <u>Pattern of Racketeering Activity</u>

2      The RICO statute defines a "pattern of racketeering

3  activity" as at least two racketeering acts within ten years of

4  one another.  18 U.S.C. § 1961(5).  In order to form a pattern,

5  the two acts must be related to each other and pose a threat of

6  continuing activity.  <u>H.J. Inc. v. Northwestern Bell Telephone</u>

7  <u>Co.</u>, 492 U.S. 229, 238-40, 109 S.Ct. 2893, 2900-02, 106 L.Ed. 2d

8  195, 207-09 (1989); <u>Fernández</u>, 388 F.3d at 1221.  In some cases,

9  "the threat of continuity may be established by showing that the

10  predicate acts or offenses are part of an ongoing entity's

11  regular way of doing business.  Thus, the threat of continuity is

12  sufficiently established where the predicates can be attributed

13  to a defendant operating as part of a long-term association that

14  exists for criminal purposes." <u>H.J. Inc.</u>, 492 U.S. at 241-243.

15      To establish that the affairs of the enterprise were

16  conducted through a pattern of racketeering activity,  evidence

17  must exist that "the predicate offenses are related to the

18  activities of th[e] enterprise." <u>United States v. Scotto</u>, 641

19  F.2d 47, 54 (2d Cir. 1980).  The requisite relationship between

20  the racketeering acts and the enterprise would be established

21  when the racketeering acts "have the same or similar purposes,

22  results, participants, victims, or methods of commission, or

23  otherwise are interrelated by distinguishing characteristics and

24  are not isolated events..." <u>Id.</u> at 240.

25

26

27

28                        11

    f.   Effect on Interstate Commerce

The Ninth Circuit repeatedly has held that only a "de minimis" effect on interstate commerce is required for a RICO violation. <u>Fernandez</u>, 388 F.3d at 1218. <u>See also</u> <u>United States v. Bagnariol</u>, 665 F.2d 877, 892 (9th Cir. 1981). Moreover, it is the activities of the enterprise, not each predicate act, which must affect interstate commerce. <u>Bagnariol</u>, 665 F.2d at 892.

    g.   Evidence of Uncharged Crimes is Admissible

It is well-established that in RICO cases, evidence of uncharged crimes is admissible to prove the existence of the enterprise, a RICO conspiracy, a defendant's participation in both, continuity of the pattern of racketeering activity and other related matters. <u>See, e.g.</u>, <u>United States v. Matera</u>, 489 F.3d 115, 120-21 (2d Cir. 2007)(admission of uncharged murders committed by members of the Gambino LCN family to prove the RICO enterprise - the Gambino LCN family).[3]

---

    [3] <u>See also</u> <u>United States v. Baez</u>, 349 F.3d 90, 93-94 (2d Cir. 2003) (admitting evidence of sixteen uncharged robberies to establish the alleged enterprise and conspiracy); <u>United States v. Diaz</u>, 176 F.3d 52, 79 (2d Cir. 1999) (admission of evidence that members of the Latin Kings Street gang, the RICO enterprise, committed uncharged drug trafficking and crimes of violence on behalf of the Latin Kings "to prove the existence, organization and nature of the RICO enterprise, and a pattern of racketeering by each defendant-appellant"); <u>United States v. Richardson</u>, 167 F.3d 621, 625-26 (D.C. Cir. 1999) (continuity may be established by the totality of all the co-defendants' unlawful conduct); <u>United States v. Keltner</u>, 147 F.3d 662, 667-68 (8th Cir. 1998) (uncharged criminal conduct by coconspirator admissible to prove the enterprise); <u>United States v. Salerno</u>, 108 F.3d 730, 738-39 (7th Cir. 1997) (uncharged extortionate collections by defendants admissible to prove the enterprise); <u>United States v. Miller</u>, 116 F.3d 641, 682 (2d Cir. 1997) (admission of evidence of uncharged murders committed by some defendants and other enterprise members

to show the existence of the enterprise and acts in furtherance
of the conspiracy); United States v. Krout, 66 F.3d 1420, 1425
(5th Cir. 1995) (admission of uncharged murders committed by the
defendants was not prejudicial when admitted to establish that
murder and extreme violence were part of the enterprise's
objectives and manner and means), cert. denied, 516 U.S. 1136
(1996); United States v. DiSalvo, 34 F.3d 1204, 1221 (3d Cir.
1994) (upholding admission of defendant's uncharged acts to
establish the existence of the enterprise and the defendant's
participation in and knowledge of the enterprise); United States
v. Thai, 29 F.3d 785, 812-13 (2d Cir. 1994) (admission of
uncharged extortion, robbery and murder plans by defendants to
prove the RICO conspiracy and acts in furtherance of it); United
States v. Brady, 26 F.3d 282, 286-88 (2d Cir. 1994) (admission of
uncharged murders committed by nondefendant members of the
Colombo LCN family to prove the Colombo family enterprise and the
charged conspiracy by a faction of the Colombo family to kill
members of a rival faction of the Colombo family); United States
v. Clemente, 22 F.3d 477, 483 (2d Cir. 1994) (upholding admission
of defendant's uncharged acts for purpose of establishing
existence of RICO enterprise), cert. denied, 513 U.S. 900 (1994);
United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir. 1991)
(admission of evidence of murders by enterprise members occurring
prior to the defendant's joining the enterprise was proper to
show the existence of the enterprise), cert. denied, 503 U.S. 941
(1992); United States v. Eufrasio, 935 F.2d 553, 572-73 (3d Cir.)
(upholding admission of uncharged murders and other mafia crimes
to show the existence and nature of the RICO enterprise and
conspiracy), cert. denied, 502 U.S. 925 (1991); United States v.
Alkins, 925 F.2d 541, 551-53 (2d Cir. 1991) (the requisite
continuity may be established against a defendant through
evidence of uncharged crimes by other members of the enterprise
not charged in the indictment); United States v. Coiro, 922 F.2d
1008, 1017 (2d Cir. 1991) (continuity established where a corrupt
attorney's bribery of public officials and money laundering
spanning approximately four months was part of a long-term drug
enterprise that engaged in other unlawful activities that was
likely to continue "absent outside intervention"); United States
v. Gonzalez, 921 F.2d 1530, 1545-47 (11th Cir. 1991) (uncharged
crimes by defendant and other conspirators admissible to prove
the enterprise and continuity); United States v. Link, 921 F.2d
1523, 1527 (11th Cir. 1991) (evidence of continuity was not
limited to the defendant's two acts of possession of drugs with
the intent to distribute, but rather was adequately established
by evidence of other unlawful drug trafficking by other members
of the enterprise); United States v. Ellison, 793 F.2d 942, 949
(8th Cir. 1986) (uncharged crimes of violence by other members of
the enterprise admitted to establish existence of enterprise),

B.   21 U.S.C. §§ 846, 841 (a)(1), and (b)(1)(A)(iii), (b)(1)(A)(viii) (count two)

1.   Statutory Language

Title 21, United States Code, Section 846 provides in pertinent part:

> Any person who . . . conspires to commit any offense defined in [Subchapter I of Title 21] should be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the . . . conspiracy.

Title 21, United States Code, Section 841(a)(1) provides that "it shall be unlawful for any person knowingly or intentionally . . . to . . . distribute or possess with intent to distribute . . . a controlled substance."

Count Two charges defendants Eduardo Hernandez, Vladimir Iraheta, and Leonidas Iraheta, and other alleged co-conspirators, with conspiring to possess with intent to distribute and to distribute:

(1) at least 280 grams of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(iii); or

---

cert. denied, 479 U.S. 937 (1986); United States v. Murphy, 768 F.2d 1518, 1534-35 (7th Cir. 1985) (proper to admit evidence of uncharged bribes paid to defendant to prove overt acts in furtherance of the conspiracy and to prove a common plan and absence of mistake to rebut defendant's character evidence), cert. denied, 475 U.S. 1012 (1986); United States v. Gray, 292 F. Supp. 2d 71, 77-82 (D.C. 2003) (holding that evidence of various crimes of violence, drug trafficking, and money laundering properly were admitted to prove the charged RICO and drug trafficking conspiracies, the continuing of the pattern of criminal activity and the association of members of the conspiracies and enterprise).

14

1   (2) at least 50 grams of methamphetamine, in violation of

2   Title 21, United States Code, Sections 841(a)(1) and

3   (b)(1)(A)(viii).

4   C.   <u>18 U.S.C. § 1959(a) (Violent Crime in Aid of Racketeering)</u>
        <u>(counts 11, 16, 18, and 19)</u>

5

6        1.   <u>Statutory Language</u>

7        Title 18, United States Code, Section 1959(a) provides in

    pertinent part:

8

9            Whoever, as consideration for the receipt of, or as
             consideration for a promise or agreement to pay,
             anything of pecuniary value from an enterprise engaged

10           in racketeering activity, or for the purpose of gaining
             entrance to or maintaining or increasing position in an

11           enterprise engaged in racketeering activity, murders,
             kidnaps, maims, assaults with a dangerous weapon,

12           commits assault resulting in serious bodily injury
             upon, or threatens to commit a crime of violence

13           against any individual in violation of the laws of any
             State or the United States, or attempts or conspires so

14           to do, shall be punished. . .

15   D.   <u>18 U.S.C. § 1201(c) (Conspiracy to Commit Kidnaping)</u>
         <u>(count 20)</u>

16

17       1.   <u>Statutory Language</u>

18       Title 18, United States Code, Section 1201(c) provides in

    pertinent part:

19

20           If two or more persons conspire to violate this section
             and one or more of such persons do any overt act to
             effect the object of the conspiracy, each shall be

21           punished....

22       2.   <u>Applicable Law</u>

23       In order to establish a conspiracy under 18 U.S.C.

24   § 1201(c), the government must prove that a member of the

25   conspiracy committed an overt act in furtherance of the

26   conspiracy.   An overt act is any act done by a member of the

27

28                          15

1    conspiracy for the purpose of carrying out or accomplishing the

2    object of the conspiracy.  <u>United States v. Falcone</u>, 311 U.S.

3    205, 210, 61 S.Ct. 204, 206, 85 L.Ed. 128, 132 (1940).  Because

4    the purpose of the overt act requirement is merely to show that

5    the conspiracy is at work, the overt act need not be criminal in

6    character.  <u>Yates v. United States</u>, 354 U.S. 298, 334, 77 S.Ct.

7    1064, 1084, L.Ed. 2d 1356, 1384 (1957); <u>United States v. Touhey</u>,

8    867 F.2d 534, 537 (9th Cir. 1989).  The government need only

9    prove one of the overt acts charged in the conspiracy count of

10   the indictment.  <u>United States v. Lyman</u>, 592 F.2d 496, 500 (9th

11   Cir. 1980).

12       Even when an indictment alleges specific overt acts, the

13   government "is not limited in its proof at trial to those overt

14   acts alleged in the indictment."  <u>United States v. Pomales-</u>

15   <u>Lebron</u>, 513 F.3d 262, 269 (1st Cir. 2008) (discussing proof of

16   conspiracies charged under 21 U.S.C. § 846); <u>see also</u> <u>United</u>

17   <u>States v. Williams</u>, 989 F.2d 1061, 1070 (9th Cir. 1993) (holding

18   that uncharged drug transactions that predated the charged drug

19   conspiracy were "inextricable from and provided necessary context

20   for [witness's] testimony about the charged conduct" and thus

21   should not be considered evidence of "other crimes" under Fed. R.

22   Evid. 404(b)).

23   E.    <u>18 U.S.C. § 1201(a)(1) (Kidnaping) (count 21)</u>

24       1.    Statutory Language

25       Title 18, United States Code, Section 1201(a)(1) provides in

26   pertinent part:

27

28                                16

> Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person . . . when (1) the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce. . . shall be punished....

### 2.   Applicable Law

Proof of motive is not required under 18 U.S.C. § 1201(a). Gawne v. United States, 409 F.2d 1399, 1403-04 (9th Cir. 1969) ("[K]idnaper's motivation is not an element of the offense.").

## F.   18 U.S.C. § 2 (Aiding and Abetting) (counts 3-7, 11, 16, 17, 18 and 19)

### 1.   Statutory Language

Title 18, United States Code, Section 2, provides, in pertinent part:

> Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

### 2.   Applicable Law

It is not a prerequisite to conviction for aiding and abetting that the principal be convicted, indicted, or even identified, although the government must prove that someone committed the underlying crime. See United States v. Mann, 811 F.2d 495, 497 (9th Cir. 1987); United States v. Barnett, 667 F.2d at 835, 841 (9th Cir. 1982). Instead, in order to establish a defendant's guilt as an aider and abetter, the government must prove that the defendant knowingly associated himself with a criminal venture and by his participation in that venture sought to make it succeed. See United States v. Vaccaro, 816 F.2d 443,

455 (9th Cir. 1987); United States v. Vaughn, 797 F.2d 1485, 1492

(9th Cir. 1986); United States v. McKoy, 771 F.2d 1207, 1215 (9th

Cir. 1985).  Conscious assistance in the planning of a crime is a

sufficient basis for aider and abetter liability.  See McKoy, 771

F.2d at 1216; United States v. Barnett, 667 F.2d 835, 841-842

(9th Cir. 1982).

G.   Conspiracies

   1.   Applicable Law

      a.   The Agreement

   "The agreement need not be explicit; it may be inferred from

the defendant's acts pursuant to a fraudulent scheme or from

other circumstantial evidence."  United States v. Cloud, 872 F.2d

846, 852 (9th Cir. 1989).  See also United States v. Boone, 951

F.2d 1526, 1543 (9th Cir. 1991); United States v. Hernandez, 876

F.2d 774, 777 (9th Cir. 1989).  The government need not prove

direct contact between co-conspirators or the existence of a

formal agreement; instead, an agreement constituting a conspiracy

may be inferred from the acts of the parties and other

circumstantial evidence indicating concert of action for the

accomplishment of a common purpose.  See United States v. Garza,

980 F.2d 546, 552-53 (9th Cir. 1992); United States v. Hegwood,

977 F.2d 492 (9th Cir. 1992); United States v. Becker, 720 F.2d

1033, 1035 (9th Cir. 1983).

   It is not necessary for the government to show that the

defendant knew "the exact scope of the conspiracy, the identity

and role of each of the co-conspirators, or the details of the

1  operations or any particular plan." <u>United States v. Thomas</u>, 586

2  F.2d 123, 132 (9th Cir. 1978).  However, the government must

3  prove that the defendant was aware of "the essential nature of

4  the plan." <u>Blumenthal v. United States</u>, 332 U.S. 539, 557, 68

5  S.Ct. 248, 256, L.Ed. 154, 168 (1947).  <u>See also United States v.</u>

6  <u>Krasovich</u>, 819 F.2d 253, 255-56 (9th Cir. 1987).  The key element

7  of proof as to any specific co-conspirator is the showing that he

8  knew, or had reason to know, of the participation of others in

9  the illegal plan, and that he knew, or had reason to know, that

10  the benefits to be derived from the operation were probably

11  dependent upon the success of the entire venture.  <u>United States</u>

12  <u>v. Abushi</u>, 682 F.2d 1289, 1293 (9th Cir. 1982); <u>United States v.</u>

13  <u>Baxter</u>, 492 F.2d 150, 158 (9th Cir. 1973).

14              b.   <u>Participation in the Conspiracy</u>

15       The government must show that a conspiracy between at least

16  two people existed and that the defendant was a member of the

17  conspiracy charged.  <u>United States v. Reese</u>, 775 F.2d 1066, 1071

18  (9th Cir. 1985) (conspiracy must involve at least two people);

19  <u>United States v. Murray</u>, 751 F.2d 1528, 1534 (9th Cir. 1985)

20  (charged defendant must be member of conspiracy).  Once a

21  conspiracy is proven, evidence establishing beyond a reasonable

22  doubt the defendant's connection to that conspiracy – even if the

23  connection is slight – is sufficient to convict him of knowingly

24  participating in the conspiracy.  <u>United States v. Hubbard</u>, 96

25  F.3d 1223, 1227 (9th Cir. 1996); <u>United States v. Stauffer</u>, 922

26

27

28                              19

1  F.2d 508, 514-15 (9th Cir. 1990); United States v. Guzman, 849

2  F.2d 447, 448 (9th Cir. 1988).

3           c.    Liability for Co-Conspirator Acts

4           It is a well settled tenet of conspiracy law, known as

5  Pinkerton liability, that "a party to an unlawful conspiracy may

6  be held responsible for substantive offenses committed by his co-

7  conspirators in furtherance of the unlawful project, even if the

8  party himself did not participate directly in the commission of

9  the substantive offense." United States v. Vasquez, 858 F.2d

10 1387, 1393 (9th Cir. 1988). See also Pinkerton v. United States,

11 328 U.S. 640, 646-47, 66 S.Ct. 1180, 1183-84, 90 L.Ed. 1489, 1496

12 (1946); United States v. Olano, 62 F.3d 1180, 1199 (9th Cir.

13 1995). For Pinkerton liability to apply, it is necessary that

14 the substantive offense was within the scope of the unlawful

15 agreement, was committed in furtherance of the conspiracy, and

16 was reasonably foreseeable as a natural consequence of the

17 unlawful confederation. Pinkerton, 328 U.S. at 647-48. See also

18 United States v. Lewis, 787 F.2d 1318, 1323 (9th Cir. 1986)("A

19 co-conspirator is responsible for any act done in furtherance of

20 the conspiracy unless it could not reasonably be foreseen as a

21 natural consequence of the agreement"); United States v. Reed,

22 726 F.2d 570, 580 (9th Cir. 1984)("The law is clear that a

23 defendant may be convicted of the substantive acts of his co-

24 conspirators, as long as those acts are committed pursuant to and

25 in furtherance of the conspiracy").

26

27

28                                    20

1    A conspirator who joins a pre-existing conspiracy is bound

2  by all that has gone on before in the conspiracy.  See United

3  States v. Umagat, 998 F.2d 770, 772 (9th Cir. 1993) ("One may

4  join a conspiracy already formed and in existence, and be bound

5  by all that has gone before in the conspiracy, even if unknown to

6  him").  See also United States v. Bibero, 749 F.2d 586, 588 (9th

7  Cir. 1984); United States v. Saavedra, 684 F.2d 1293, 1301 (9th

8  Cir. 1982).

9         d.    Proof of Conspiracy

10    The order of proof in a conspiracy case is a matter

11  committed to the sound discretion of the trial judge.  See United

12  States v. Fleishman, 684 F.2d 1329, 1338 (9th Cir. 1982).  "The

13  government does not have to present direct evidence.

14  Circumstantial evidence and the inferences drawn from that

15  evidence will sustain a conspiracy conviction."  United States v.

16  Castro, 972 F.2d 1107, 1110 (9th Cir. 1992) (emphasis in

17  original).

18    When a defendant is charged with conspiracy, evidence

19  tending to show the existence of a conspiracy is admissible even

20  though such evidence does not implicate the defendant as the

21  defendant's conviction is conditioned upon proof of the

22  conspiracy.  United States v. Vega-Limon, 548 F.2d 1390, 1391

23  (9th Cir. 1977).  A conspiracy is presumed to continue until

24  there is affirmative evidence of abandonment, withdrawal,

25  disavowal, or defeat of the purposes of the conspiracy.  United

26

27

28                          21

1  States v. Bloch, 696 F.2d 1213, 1215 (9th Cir. 1982); United

2  States v. Krasn, 614 F.2d 1229, 1236 (9th Cir. 1980).

3         e.    Co-conspirator Declarations

4         Declarations by one co-conspirator during the course and in

5  furtherance of the conspiracy may be used against another

6  conspirator because such declarations are not hearsay. See Fed.

7  R. Evid. 801(d)(2)(E).  Further, statements made in furtherance

8  of a conspiracy were expressly held by the Supreme Court in

9  Crawford v. Washington, 541 U.S. 36, 56 (2004) to be "not

10 testimonial" such that their admission does not violate the

11 Confrontation Clause.  As such, the admission of co-conspirator

12 statements pursuant to Fed. R. Evid. 801(d)(2)(E) requires only a

13 foundation that: (1) the declaration was made during the life of

14 the conspiracy; (2) it was made in furtherance of the conspiracy;

15 and (3) there is, including the co-conspirator's declaration

16 itself, sufficient proof of the existence of the conspiracy and

17 of the defendant's connection to it. See Bourjaily v. United

18 States, 483 U.S. 171, 173, 181, 107 S.Ct. 2775, 2777-82, 97 L.Ed.

19 2d 144, 151-57 (1987).

20        The government must prove by a preponderance of the evidence

21 that a statement is a co-conspirator declaration in order for the

22 statement to be admissible under Rule 801(d)(2)(E).  Bourjaily,

23 483 U.S. at 176; United States v. Crespo de Llano, 838 F.2d 1006,

24 1017 (9th Cir. 1987).  Whether the government has met its burden

25 is to be determined by the trial judge, and not the jury.  United

26 States v. Zavala-Serra, 853 F.2d 1512, 1514 (9th Cir. 1988).

27

28                               22

1     The trial court has discretion to determine whether the

2  government may introduce co-conspirator declarations before

3  establishing the conspiracy and the defendant's connection to it.

4  United States v. Loya, 807 F.2d 1483, 1490 (9th Cir. 1987).  It

5  also has the discretion to vary the order of proof in admitting a

6  co-conspirator's statement.  Id.  The court may allow the

7  government to introduce co-conspirator declarations before laying

8  the required foundation under the condition that the declarations

9  will be stricken if the government fails ultimately to establish

10  by independent evidence that the defendant was connected to the

11  conspiracy.  Id.; United States v. Spawr Optical Research, Inc.,

12  685 F.2d 1076, 1083 (9th Cir. 1982); Fleishman, 684 F.2d at 1338.

13     It is not necessary for the defendant to be present at the

14  time a co-conspirator statement was made for it to be introduced

15  as evidence against that defendant.  See Sendejas v. United

16  States, 428 F.2d 1040, 1045 (9th Cir. 1970).  Similarly,

17  declarations of an unindicted co-conspirator made in furtherance

18  of the conspiracy may be used against a charged conspirator.  See

19  United States v. Nixon, 418 U.S. 683, 701 (1974); United States

20  v. Williams, 989 F.2d 1061, 1067 (9th Cir. 1993).

21     To be admissible under Federal Rule of Evidence 801(d)(2)(E)

22  as a statement made by a co-conspirator in furtherance of the

23  conspiracy, a statement must "further the common objectives of

24  the conspiracy," or "set in motion transactions that [are] an

25  integral part of the [conspiracy]."  United States v. Arambula-

26  Ruiz, 987 F.2d 599, 607-08 (9th Cir. 1993); United States v.

27

28                    23

1   <u>Yarbrough</u>, 852 F.2d 1522, 1535 (9th Cir. 1988).  Such statements

2   are admissible whether or not they actually result in any benefit

3   to the conspiracy.  <u>Williams</u>, 989 F.2d at 1068; <u>United States v.</u>

4   <u>Schmit</u>, 881 F.2d 608, 612 (9th Cir. 1989).  Thus, co-conspirator

5   declarations need not be made to a member of the conspiracy to be

6   admissible under Rule 810(d)(2)(E) and can be made to government

7   informants and undercover agents.  <u>Zavala-Serra</u>, 853 F.2d at 1516

8   (statements to informants and undercover agents); <u>United States</u>

9   <u>v. Tille</u>, 729 F.2d 615, 620 (9th Cir. 1984) (statements to

10  informants); <u>United States v. Echeverry</u>, 759 F.2d 1451, 1457 (9th

11  Cir. 1985) (statements to undercover agent).

12      Courts have interpreted the "in furtherance of" requirement

13  broadly and have considered, among others, the following

14  co-conspirator declarations as being made "in furtherance of the

15  conspiracy":

16      1.   statements made to induce enlistment in the conspiracy
             ((<u>United States v. Arias-Villanueva</u>, 998 F.2d 1491,
17           1502 (9th Cir. 1993));

18      2.   statements made to keep a conspirator abreast of a
             co-conspirator's activity, to induce continued
19           participation in a conspiracy, or to allay the fears of
             a co-conspirator (<u>Arias-Villanueva</u>, 998 F.2d at 1502);
20

21      3.   statements made to prompt action in furtherance of the
             conspiracy by either of the participants to the
22           conversation (<u>United States v. Layton</u>, 720 F.2d 548,
             556 (9th Cir. 1983));

23      4.   statements related to the concealment of the criminal
             enterprise (<u>Tille</u>, 729 F.2d at 620); <u>Garlington v.</u>
24           <u>O'Leary</u>, 879 F.2d 277, 283 (7th Cir. 1989));

25      5.   statements seeking to control damage to an ongoing
             conspiracy (<u>Garlington</u>, 879 F.2d at 283);
26

27

28                              24

6.   statements made to reassure members of the conspiracy's continued existence (<u>Yarbrough</u>, 852 F.2d at 1535);

7.   statements by a person involved in the conspiracy to induce a buyer's purchase of contraband by assuring the buyer of the person's ability to consummate the transaction (<u>Echeverry</u>, 759 F.2d at 1457);

8.   statement identifying another co-conspirator as source for the contraband to be sold to purchaser (<u>Lechuga</u>, 888 F.2d at 1480);

9.   "puffing", boasts and other conversation designed to obtain the confidence of another conspirator (or apparent conspirator who actually was an undercover agent)(<u>United States v. Santiago</u>, 837 F.2d 1545, 1549 (11th Cir. 1988); <u>Lechuga</u>, 888 F.2d at 1480; <u>United States v. Miller</u>, 664 F.2d 94, 98 (5th Cir. 1981)); and

10.  statements that refer to another conspirator as the boss, the overseer, or sir (<u>United States v. Barnes</u>, 604 F.2d 121, 157 (2d Cir. 1979)).

III.

STATEMENT OF FACTS

The government intends to introduce evidence at trial to establish the following facts, among others:

A.   <u>THE ENTERPRISE</u>

The CLCS Organization, the racketeering enterprise charged in the Indictment, is comprised of members and associates of the Columbia Lil Cycos ("CLCS") clique of the 18th Street Gang. The evidence at trial will show that the CLCS Organization was engaged in, among other things, murder, extortion, robbery, kidnaping, money laundering, witness intimidation, and narcotics trafficking.

The CLCS Organization is controlled principally by senior members, or leaders, who are known in gang terms as "shot callers." Shot callers are responsible for, among other things,

25

1  generating revenue by managing the drug trafficking in CLCS

2  Organization territory; collecting extortion payments, commonly

3  referred to as "rent," from individuals conducting activities

4  within CLCS Organization territory; enforcing the directives of

5  the Mexican Mafia member in charge of the CLCS Organization and

6  the CLCS Organization rules; resolving intra-clique disputes;

7  recruiting associates, including members of other 18th Street

8  Gang cliques, to assist the CLCS Organization in achieving its

9  objectives; and ensuring that the Mexican Mafia member in charge

10  of the CLCS Organization receives the rent payments that he

11  demands.

12      The CLCS Organization generates revenue primarily by

13  controlling the drug trafficking occurring within its territory.

14  It does so through a system whereby CLCS Organization-approved

15  drug wholesalers, known as "mayoristas," and street level

16  dealers, known as "traqueteros," are permitted to conduct

17  narcotics sales, primarily involving cocaine base in the form of

18  crack cocaine ("crack cocaine"), within CLCS Organization

19  territory, with protection from rivals and without other

20  interference, in return for providing the CLCS Organization with

21  regular payments of a designated percentage of the proceeds of

22  their narcotics sales.  Like the required payments to the Mexican

23  Mafia, these payments are commonly referred to as "rent" or

24  "taxes."

25      The CLCS Organization also generates revenue by taxing other

26  illegal activity occurring within its territory, including the

27

28                                26

1  trafficking of fraudulent documents by street dealers known as

2  "miqueros" and the sale of goods by street vendors, as well as

3  through a wide array of crimes committed by CLCS Organization

4  members and associates, including extortion and robbery.

5       The CLCS Organization, through its members and associates,

6  takes steps to conceal and disguise its criminal activities from

7  law enforcement including the proceeds generated from its illegal

8  conduct.  For example, members and associates of the CLCS

9  Organization regularly used coded language to disguise the

10 content of telephone communications relating to illegal conduct

11 and frequently converted narcotics proceeds and rent collections

12 into money orders, which are used for numerous purposes,

13 including, but not limited to: (a) transferring funds to the

14 Mexican Mafia member in charge of the CLCS Organization and

15 others known and unknown to the Grand Jury; (b) using money

16 orders to promote the enterprise's financial interests; and (c)

17 using money orders to conceal the nature and origin of the

18 narcotics proceeds and rent collections generated by the

19 enterprise.

20      Individuals who impede the CLCS Organization's efforts to

21 generate revenue, including the collection of rent imposed on

22 drug traffickers and street vendors, or who otherwise disregard

23 its directives, are subject to discipline and/or retribution from

24 CLCS Organization members and associates, which can include

25 monetary fines, threats, and acts of violence.

26

27

28                              27

By participating in CLCS Organization-directed activities and adhering to CLCS Organization directives, members and associates are able to maintain and increase their standing with the CLCS Organization.  This is particularly true for acts of violence committed at the direction, and on behalf, of the CLCS Organization, which not only maintains and increases the standing of the individual who executed the act but also maintains and increases the CLCS Organization's control of its territory by reinforcing its reputation for intimidation and violence.

B.    THE MEXICAN MAFIA

The Mexican Mafia exercises control over the Hispanic street gangs of Southern California, including the 18th Street Gang.  It is a criminal organization that operates within the California state prison system and, to a lesser extent, the federal prison system.  Members of the Mexican Mafia come from the ranks of local Southern California street gangs, including the 18th Street Gang.  The Mexican Mafia charges the street gangs under its control a specified sum of money to be paid on a regular basis, known as "taxes" or "rent," which is payable to the Mexican Mafia member designated to oversee the particular clique, or subset, of the gang.  In return for such payments, the cliques receive the Mexican Mafia's authorization to control the criminal activities occurring within the clique's territory free of interference or competition from other cliques, as well as protection for gang members who are incarcerated.  Failure to pay either the requisite rent or to adhere to the Mexican Mafia's directives

1  will result in the clique being penalized by the Mexican Mafia,

2  which can include having violence directed at either individual

3  members of the clique or the clique as a whole.   The CLCS

4  Organization operates under the ultimate authority and direction

5  of Mexican Mafia Member Francisco "Puppet" Martinez, who is

6  incarcerated in federal prison, and exercises control over the

7  CLCS Organization with the assistance of intermediaries who

8  facilitate his receipt of rent payments and either communicate or

9  assist in the communication of Martinez's directives to the CLCS

10  Organization's leadership.

11  C.   DEFENDANTS' ROLE IN THE ENTERPRISE[4]

12       1.   Defendants Hernandez, V. Iraheta, and L. Iraheta

13       Defendants Hernandez, V. Iraheta, and L. Iraheta are

14  charged in count 1 with RICO conspiracy and in count 11 with the

15  VICAR murder of victim J.B.

16       The evidence at trial will show that defendants Hernandez,

17  V. Iraheta, and L. Iraheta are long-standing members of the CLCS

18  Organization.   V. Iraheta and L. Iraheta collected "rent" or

19  "taxes" from narcotics traffickers who operated on behalf of the

20  enterprise.   They also enforced the rules of the organization and

21  perpetuated its control over its territory by engaging in acts of

22  violence on behalf of the gang.   Defendant Hernandez is a long-

23  time, high-ranking member of the CLCS Organization who

_____

25       [4]   Given the number of counts at issue, the government has
26  not addressed every count but rather has provided a
    representative overview of the type of evidence that will be
27  presented at trial.

1 distributed narcotics on behalf of the CLCS Organization,

2 collected "rent" from narcotics traffickers who operated in the

3 organization's territory, and enforced rules within the

4 organization's territory by engaging in or threatening to engage

5 in acts of violence.  V. Iraheta and L. Iraheta distributed

6 narcotics on behalf of the CLCS Organization, and served as

7 Hernandez' bodyguards and helped him to collect rent and enforce

8 the CLCS Organization's rules.

9      2.   Defendant Javier Perez

10     Defendant Perez is charged in count 1 with RICO conspiracy,

11 in count 16 with VICAR conspiracy to murder G.M., in count 17

12 with VICAR conspiracy to kidnap victim G.M., in count 18 with the

13 VICAR murder of victim G.M., in count 19 with the VICAR kidnaping

14 of victim G.M., in count 20 with conspiracy to commit kidnaping,

15 and in count 21 with kidnaping.

16     The evidence will show that defendant Perez is a CLCS

17 Organization associate and a member of the South Central clique

18 of the 18th Street Gang, who, ten days after being released from

19 prison, assisted CLCS Organization members in enforcing CLCS

20 Organization control of its territory through intimidation,

21 threats of violence, and actual violence.

22 D.   THE MURDER OF VICTIM J.B. AND THE ATTEMPTED MURDER OF A.H.

23     On July 21, 2001, at approximately 2:49 a.m., defendants

24 V. Iraheta, L. Iraheta, and Hernandez shot and killed victim

25 J.B., as he stood with two friends, A.H. and R.G., on the

26 sidewalk in front of his childhood home on 4th Street in an area

27

28                              30

bordering territory controlled by the CLCS Organization.  J.B.,
who was a college student and had no gang affiliation, had come
home from college the day before to attend a family wedding.
J.B. died of a single nine-millimeter gunshot wound to the head.
The multiple shots fired also struck A.H. in the leg.  A.H.
survived the shot.  That same night, immediately prior to and
just around the corner from where the shooting occurred,
defendants V. Iraheta, L. Iraheta, and Hernandez assaulted H.C.
with their fists and a handgun and threatened his girlfriend,
N.R., as they attempted to get out of a car in which their six-
month old infant was seated.

In both the shooting and the prior assault, defendants
V. Iraheta, L. Iraheta, and Hernandez asked their victims "where
are you from" (i.e., what is your gang affiliation) and were told
unequivocally that their victims were "from nowhere" (i.e., that
they had no gang affiliation).  Nevertheless, defendants
proceeded to shoot J.B. and A.H., resulting in J.B.'s death, and
to assault H.C. and threaten N.R. in the presence of their infant
child, because these individuals happened to be in the rival
Rockwood Gang's territory when defendants went looking for rivals
to kill.

E.   THE MURDER OF VICTIM L.A.G. AND THE ATTEMPTED MURDER OF G.M.

On September 15, 2007, at approximately 9:28 p.m., on 6th
Street near Burlington Avenue in an area controlled by the CLCS
Organization, just west of downtown Los Angeles, CLCS
Organization members and associates shot and critically injured

31

1  F.C., a street vendor in CLCS territory who had refused to cede

2  to the gang's demands for a weekly $50 "rent" payment.  F.C. was

3  shot four times and critically injured.  L.A.G., a twenty-three

4  day-old infant who was sitting in a stroller next to F.C. at the

5  time of the shooting, was hit in the chest by a stray bullet and

6  died later that night.

7       In the role of shot caller, defendant Sergio Pantoja ordered

8  the murder of G.M., an 18-year-old, low-level gang member who

9  shot at F.C. and killed L.A.G., to protect the gang's standing

10  with the Mexican Mafia, whose rules proscribe violence against

11  infants because such violence leads to increased law enforcement

12  attention.  Fellow 18th Street Gang members Juan Pablo Murillo

13  and defendant Perez attempted to kill G.M. in Mexico.  G.M.,

14  however, survived the attempt on his life and returned to the

15  United States.

16                              IV.

17                       EVIDENTIARY ISSUES

18  A.   ADMISSIBILITY OF PHYSICAL EVIDENCE

19       1.   Authentication and Identification/Chain of Custody

20       Federal Rule of Evidence 901(a) provides that "[t]he

21  requirement of authentication or identification as a condition

22  precedent to admissibility is satisfied by evidence sufficient to

23  support a finding that the matter in question is what its

24  proponent claims."  As such, issues of authenticity and

25  identification are treated under Rule 901 as simply "a special

26

27

28                              32

1  aspect of relevancy." Fed. R. Evid. 901(a) (Advisory Committee

2  Notes).

3      Rule 901(a) only requires the government to make a <u>prima</u>

4  <u>facie</u> showing of authenticity or identification "so that a

5  reasonable juror could find in favor of authenticity or

6  identification." <u>United States v. Chu Kong Yin</u>, 935 F.2d 990,

7  996 (9th Cir. 1991); <u>see also</u> <u>United States v. Blackwood</u>, 878

8  F.2d 1200, 1202 (9th Cir. 1989); <u>United States v. Black</u>, 767 F.2d

9  1334, 1342 (9th Cir. 1985).  Once the government meets this

10 burden, "the credibility or probative force of the evidence

11 offered is, ultimately, an issue for the jury." <u>Black</u>, 767 F.2d

12 at 1342.

13     The authenticity of proposed exhibits may be proven by

14 circumstantial evidence. <u>United States v. Natale</u>, 526 F.2d 1160,

15 1173 (2d Cir. 1975); <u>United States v. King</u>, 472 F.2d 1, 9-11 (9th

16 Cir. 1973).  Moreover, the prosecution need only prove a rational

17 basis from which the jury may conclude that the exhibits did, in

18 fact, belong to the defendant. Fed. R. Evid. 401(a); <u>United</u>

19 <u>States v. Blackwell</u>, 694 F.2d 1325, 1330 (D.C. Cir. 1982); <u>United</u>

20 <u>States v. Sutton</u>, 426 F.2d 1202, 1206-08 (D.C. Cir. 1969).

21     To be admitted into evidence, a physical exhibit must be in

22 substantially the same condition as when the crime was committed.

23 The court may admit the evidence if there is "a reasonable

24 probability the article has not been changed in important

25 respects." <u>United States v. Harrington</u>, 923 F.2d 1371, 1374 (9th

26 Cir. 1991).  This determination is to be made by the trial judge

27

28                              33

1   and will not be overturned except for clear abuse of discretion.

2   Factors the court may consider in making this determination

3   include the nature of the item, the circumstances surrounding its

4   preservation, and the likelihood of intermeddlers having tampered

5   with it.   See United States v. Kaiser, 660 F.2d 724, 733 (9th

6   Cir. 1981); Gallego v. United States, 276 F.2d 914, 917 (9th Cir.

7   1960).

8          In establishing chain of custody as to an item of physical

9   evidence, the government is not required to call all persons who

10  may have come into contact with the piece of evidence.   Reyes v.

11  United States, 383 F.2d 734 (9th Cir. 1967); Gallego, 276 F.2d at

12  917.   Moreover, a presumption of regularity exists in the

13  handling of exhibits by public officials.   Kaiser, 660 F.2d at

14  733; United States v. De Bright, 730 F.2d 1255, 1259 (9th Cir.

15  1984) (en banc); Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991).

16  Therefore, to the extent that alleged or actual gaps in the chain

17  of custody exist, such gaps go to the weight of the evidence

18  rather than to its admissibility.   Gallego, 276 F.2d at 917.

19          a.   Photographs

20       Photographs may be authenticated by a witness who

21  "identif[ies] the scene itself [in the photograph] and its

22  coordinates in time and place."   Lucero v. Stewart, 892 F.2d 52,

23  55 (9th Cir. 1989).   It is not necessary to have the photographer

24  establish the foundation for the photograph.   Any person

25  sufficiently familiar with the area photograph can be the

26  proponent of the photograph.   Id.; see also United States v.

27

28                              34

1  <u>Henderson</u>, 241 F.3d 638 (9th Cir. 2000) ("Lay witness may give an

2  opinion regarding the identity of an individual depicted in a

3  photograph provided the witness has had sufficient contact with

4  the defendant to achieve a level of familiarity that renders the

5  lay opinion helpful.").

6        b.    <u>Recorded Conversations</u>

7       Audio recordings are admissible upon a showing that "the

8  recording is accurate, authentic and generally trustworthy."

9  <u>United States v. King</u>, 587 F.2d 956, 961 (9th Cir. 1978).

10  The Ninth Circuit has held that recordings:

11        [a]re sufficiently authenticated under Federal Rule of
          Evidence 901(a) if 'sufficient proof has been
12        introduced so that a reasonable juror could find in
          favor of authenticity or identification.  This is done
13        by proving a connection between the evidence and the
          party against whom the evidence is admitted, and can
14        be done by both direct and circumstantial evidence.

15  <u>United States v. Matta-Ballesteros</u>, 71 F.3d 754, 768 (9th Cir.

16  1995), <u>modified</u>, 98 F.3d 1100 (9th Cir. 1996) (allowing into

17  evidence recordings of the torture of DEA Special Agent Camarena

18  that were found in the possession of a co-defendant) (internal

19  citations omitted).

20       Rule 901(b)(5) sets a low threshold for voice

21  identifications offered to determine the admissibility of

22  recorded conversations.  It permits "[i]dentification of a voice,

23  whether heard firsthand or through mechanical or electronic

24  transmission or recording, by opinion based upon hearing the

25  voice at any time under circumstances connecting it with the

26  alleged speaker."  Under this rule, audio recordings may be

27

28                              35

authenticated by persons who are not parties to the recorded

conversation, as long as the person can identify the voices on

the recording.  Fed. R. Evid. 905(b)(5); <u>United States v. Torres</u>,

908 F.2d 1417, 1425 (9th Cir. 1990); <u>United States v. Thomas</u>, 586

F.2d 123, 133 (9th Cir. 1978).  A witness's opinion testimony in

this regard may be based upon his having heard the voice on

another occasion under circumstances connecting it with the

alleged speaker.  Fed. R. Evid. 901(b)(5); <u>Torres</u>, 908 F.2d at

1425 ("Testimony of voice recognition constitutes sufficient

authentication."); <u>United States v. Bassey</u>, 613 F.2d 198, 202 n.2

(9th Cir. 1979); <u>United States v. Turner</u>, 528 F.2d 143, 163 (9th

Cir. 1975).  If the identifying witness is "'minimally familiar'

with the voice he identifies, Rule 901(b) is satisfied."  <u>United

States v. Plunk</u>, 153 F.3d 1011, 1022-23 (9th Cir.), <u>amended</u>, 161

F.3d 1195 (9th Cir. 1998).

     The speaker's identity also can be established by

circumstantial evidence.  Fed. R. Evid. 901(b)(5), (6).  Such

evidence may include: (1) defendant's identification of himself

during the conversation either by surname, first name, or

nickname (<u>United States v. Vento</u>, 533 F.2d 838, 864 (3d Cir.

1976); <u>United States v. Turner</u>, 528 F.2d 143, 163 (9th Cir.

1975); <u>Palos v. United States</u>, 416 F.2d 438, 440 (5th Cir.

1969)); (2) listing of the telephone in the defendant's name or

the location of the telephone at the defendant's residence (Fed.

R. Evid. 901(b)(6) (call placed to phone number assigned to

defendant plus self-identification of recipient of call is

36

sufficient to identify defendant as recipient)); (3) the
speaker's revelation of information particularly known to the
person he purports to be (<u>United States v. Sawyer</u>, 607 F.2d 1190,
1193 (7th Cir. 1977); <u>United States v. Ross</u>, 321 F.2d 61, 69 (2d
Cir. 1963)); (4) the giving of directions which prove to be
correct, or returning a call and referring to what was said in a
previous conversation (<u>Sawyer</u>, 607 F.2d at 1193); or (5) visual
surveillance of the defendant after the conversation doing what
he said he would do (<u>United States v. McMillan</u>, 508 F.2d 101, 105
(8th Cir. 1974); <u>United States v. Bonanno</u>, 487 F.2d 654, 659 (2d
Cir. 1973); <u>see also</u> <u>Van Ripper v. United States</u>, 13 F.2d 961,
968 (2d Cir. 1926) ("[T]he substance of the communication may
itself be enough to make prima facie proof [of identity]")).

Although the overwhelming majority of recordings to be
introduced are clear in sound quality, recorded conversations can
serve as competent evidence even when they are partly inaudible
provided that the unintelligible portions are not so substantial
as to render the recording as a whole untrustworthy.  <u>United
States v. Rrapi</u>, 175 F.3d 742 (9th Cir. 1999); <u>United States v.
Carlson</u>, 423 F.2d 431, 440 (9th Cir. 1970).

     c.  <u>Transcripts of Recordings</u>

The government intends to present transcripts of English
language recordings as well as the English translation
transcripts of Spanish language recordings.  The Ninth Circuit
has recognized that when the transcript is a translation from a
foreign language into English, the transcripts of the English

37

translation are themselves the evidence rather than the

recordings.  See United States v. Fuentes-Montijo, 68 F.3d 352,

355 (9th Cir. 1995) ("when faced with a taped conversation in a

language other than English and a disputed English translation

transcript, the usual admonition that the tape is the evidence

and the transcript only a guide is not only nonsensical, it has

the potential for harm where the jurors are bilingual"); United

States v. Taghipour, 964 F.2d 908, 910 (9th Cir. 1992) (affirming

court's instruction to the jury that recording was the evidence

for the portion of the conversation that was in English while the

translated transcript was the evidence for the portion of the

conversation in Farsi).

       d.   Handwriting

A lay witness may authenticate handwriting on a document by

stating how he or she became familiar with the handwriting in

question.  See Fed. R. Evid. 901(b)(2); Hall v. United Ins. Co.

of America, 367 F.3d 1255, 1260-61 (11th Cir. 2004).  In laying

the requisite foundation, the witness should describe the

instruments on which the witness previously had observed the

handwriting, and provide information concerning the witness'

relationship with the signatory.  Id. at 1261.  For example, co-

workers possessing sufficient familiarity with a defendant's

handwriting have been permitted to authenticate the defendant's

handwriting.  See United States v. Tipton, 964 F.2d 650, 654-55

(7th Cir. 1992); United States v. Whittington, 783 F.2d 1210,

1214-15 (5th Cir. 1986); <u>United States v. Barker</u>, 735 F.2d 1280,

1283 (11th Cir. 1984).

    2.   <u>Items Found In a Defendant's Possession</u>

    Documents or other items found in a defendant's possession

are admissible, either as adopted admissions or to show the

circumstantial relationship of the defendant to the documents or

other items.  <u>United States v. Ospina</u>, 739 F.2d 448, 451 (9th

Cir. 1984).  For instance, a calendar or ledger may be a party

admission or co-conspirator statement, depending upon the

circumstances, if the identity of the author of the ledger is

reasonably certain.  <u>Smith</u>, 893 F.2d at 1576.

    3.   <u>Duplicates</u>

    A duplicate is admissible to the same extent as an

original unless (1) a genuine question is raised as to the

authenticity of the original, or (2) under the circumstances, it

would be unfair to admit the duplicate instead of the original.

Fed. R. Evid. 1003; <u>United States v. Smith</u>, 893 F.2d 1573, 1579

(9th Cir. 1990); <u>United States v. Leal</u>, 509 F.2d 122, 125-26 (9th

Cir. 1975); <u>United States v. Pacheco-Lovio</u>, 463 F.2d 232, 233-34

(9th Cir. 1972); <u>see also</u> <u>United States v. Skillman</u>, 922 F.2d

1370, 1375 (9th Cir. 1990) (photocopy bearing extraneous

handwriting not connected to the defendant is admissible).

    4.   <u>Business Records</u>

    Federal Rule of Evidence 803(6) excepts from the hearsay

rule "a memorandum, report, record, or data compilation, in any

form, of acts, events, conditions, opinions, or diagnoses, made

1   at or near the time by, or from information transmitted by, a

2   person with knowledge, if kept in the course of a regularly

3   conducted business activity, and if it was the regular practice

4   of that business activity to make the memorandum, report, record,

5   or data compilation, all as shown by the testimony of the

6   custodian or other qualified witness, unless the source of

7   information or the method or circumstances of preparation

8   indicate lack of trustworthiness." If evidence meets the

9   requirements for admission under Rule 803(6), no further showing

10  is necessary for admission under the Confrontation Clause. <u>See</u>

11  <u>Ohio v. Roberts</u>, 448 U.S. 56, 66 n.8 (1980); <u>United States v.</u>

12  <u>Ray</u>, 930 F.2d 1368, 1370 (9th Cir. 1990).

13        A document is admissible under Rule 803(6) if two

14  foundational facts are established: (I) the document was made or

15  transmitted by a person with knowledge at or near the time of the

16  incident recorded, and (ii) the document was kept in the course

17  of a regularly conducted business activity. <u>See</u> Ray, 930 F.2d at

18  1370; <u>Kennedy v. Los Angeles Police Dept.</u>, 901 F.2d 702, 717 (9th

19  Cir. 1989), <u>overruled on other grounds</u>, <u>Act Up!/Portland v.</u>

20  <u>Bagley</u>, 988 F.2d 868 (9th Cir. 1993). These foundational facts

21  may be established either through a custodian of records or

22  "other qualified witness." The phrase "other qualified witness"

23  is broadly interpreted to require only that the witness

24  understand the record keeping system. <u>See</u> <u>Ray</u>, 930 F.2d at 1370;

25  <u>United States v. Franco</u>, 874 F.2d 1136, 1139-1140 (7th Cir.

26  1989); <u>United States v. Hathaway</u>, 798 F.2d 902, 906 (6th Cir.

27

28                                    40

1986).  In determining whether the foundational facts have been
established, the court may consider hearsay and other evidence
not admissible at trial.  <u>See</u> Fed. R. Evid. 104(a), 1101(d)(1);
<u>Bourjaily</u>, 483 U.S. at 178-79.

The government need not establish precisely when or by whom
the document was prepared; all the rule requires is that the
document be made "at or near the time" of the act or event it
purports to record.  <u>See</u> <u>United States v. Huber</u>, 772 F.2d 585,
591 (9th Cir. 1985); <u>United States v. Bassey</u>, 613 F.2d 198, 201
n.1 (9th Cir. 1979).  Similarly, challenges to the accuracy or
completeness of the business records ordinarily go to the weight
of the evidence and not its admissibility.  <u>See, e.g., La Porta</u>
<u>v. United States</u>, 300 F.2d 878, 880 (9th Cir. 1962).

5.  <u>Self-Authenticating Records</u>

The Federal Rules of Evidence provide that business records
may be admitted into evidence without a live witness if they are
accompanied by a written declaration from a custodian of the
records certifying that the records were made in accordance with
the requirements of Rule 803(6) of the Federal Rules of Evidence.
<u>See Securities Exchange Commission v. Franklin</u>, 348 F.Supp.2d
1159, 1161 (S.D. Cal. 2004); Fed. R. Evid. 803(6) and 902(11).

Specifically, Federal Rule of Evidence 902 provides, in
pertinent part:

902  Self Authentication:  Extrinsic evidence of
authenticity as a condition precedent to admissibility
is not required with respect to the following:
. . .
(11) The original or a duplicate of a domestic
record of regularly conducted activity that would be

41

admissible under Rule 803(6) if accompanied by a
written declaration of its custodian or other qualified
person . . . certifying that the record—

    (A) was made at or near the time of the occurrence
of the matters set forth by, or from information
transmitted by, a person with knowledge of those
matters;

    (B) was kept in the course of the regularly
conducted activity; and

    (C) was made by the regularly conducted activity
as a regular practice.

A party intending to offer a record into evidence under
this paragraph must provide written notice of that
intention to all adverse parties, and must make the
record and declaration available for inspection
sufficiently in advance of their offer into evidence to
provide an adverse party with a fair opportunity to
challenge them.

Fed. R. Evid. 902(11) (emphasis added).

6.    <u>Charts and Summaries</u>

    The government may make use of summary witnesses and summary charts to reduce otherwise voluminous records and testimony into a format that is succinct and understandable. Federal Rule of Evidence 1006 provides that:

The contents of voluminous writings, recordings, or
photographs which cannot conveniently be examined in court
may be presented in the form of a chart, summary, or
calculation. The originals, or duplicates, shall be made
available for examination or copying, or both, by the
parties at a reasonable time and place. The court may order
that they be produced in court.

The Advisory Committee Notes to Rule 1006 add that: "[t]he admission of summaries of voluminous books, records, or documents offers the only practicable means of making their contents available to judge and jury. The rule recognized this practice, with appropriate safeguards."

42

A chart or summary may be admitted as evidence where the proponent establishes that the underlying documents are voluminous, admissible, and available for inspection.  See United States v. Myers, 847 F.2d 1408, 1411-1412 (9th Cir. 1988); United States v. Johnson, 594 F.2d 1253, 1255-1257 (9th Cir. 1979). While the underlying documents must be "admissible," they need not be admitted.  See Meyers, 847 F2d at 1412; Johnson, 594 F.2d 233, 239 (9th Dir. 1983); Barsky v. United States, 339 F.2d 180 (9th Cir. 1964).

Summary charts may be used by the government in opening statement.  Indeed, "such charts are often employed in complex conspiracy cases to provide the jury with an outline of what the government will attempt to prove." United States v. De Peri, 778 F.2d 963, 979 (3rd Cir. 1985) (approving government's use of chart); United States v. Rubino, 431 F.2d 284, 290 (6th Cir. 1970)(same).

Summary charts need not contain the defendant's version of the evidence and may be given to the jury while a government witness testifies concerning them.  See United States v. Radseck, 718 F.2d 233, 239 (7th Cir. 1983); See Barsky, 339 F.2d at 181. In addition, summary charts are admissible under Federal Rule of Evidence 611(a), which permits a court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from

43

1    harassment or undue embarrassment." United States v. Poschatta,

2    829 F.2d 1477, 1481 (9th Cir. 1987); United States v. Gardner,

3    611 F.2d 770, 776 (9th Cir. 1980).

4         Typically, charts used under Rule 611(a) for "pedagogical

5    purposes," or as "testimonial aids," should "not be admitted into

6    evidence or otherwise be used by the jury during deliberations."

7    United States v. Wood, 943 F.2d 1048, 1053 (9th Cir. 1991) ("We

8    have long held that such pedagogical devices should be used only

9    as a testimonial aid, and should not be admitted into evidence or

10   otherwise be used by the jury during deliberations."); see also

11   United States v. Abbas, 504 F.2d 123, 125 (9th Cir. 1974) (better

12   practice is that charts used as testimonial aids not be submitted

13   to jury).

14        Charts, however, may be used under Rule 611(a) and then

15   subsequently admitted into evidence in those instances in which

16   the defense has had opportunity to challenge the information

17   contained in the chart.  For example, in Gardner, the district

18   court admitted, over defense objection, a chart used by a

19   government witness as a testimonial aid that summarized facts and

20   calculations already in evidence.  Gardner, 611 F.2d at 776.  The

21   Ninth Circuit held that the use of this chart as a testimonial

22   aid was appropriate under Rule 611(a), and that the chart was

23   properly admitted into evidence under Rule 1006: "Having thus

24   utilized the chart without objection with a full opportunity for

25   the defendant to challenge the facts, figures, calculations and

26   underlying documents upon which the chart was based, it was not

27

28                                   44

reversible error to admit the chart in evidence." <u>Id.</u> at 776; <u>see also</u> <u>United States v. Olano</u>, 62 F.3d 1180, 1204 (9th Cir. 1995); <u>United States v. Baker</u>, 10 F.3d 1374, 1412 (9th Cir. 1993) (charts admitted after court examined them outside presence of jury, defendants had opportunity to review charts and cross-examine witness, and court gave limiting instruction that charts were not themselves substantive evidence).

Summary charts of information contained in ledgers and other documents are admissible where the ledgers are available to defendant for inspection. <u>United States v. Catabran</u>, 836 F.2d 453, 458 (9th Cir. 1982). Similarly, a chart summarizing unavailable documents is admissible under Federal Rule of Evidence 1004 if the underlying materials are "lost or destroyed" or "not obtainable." Fed. R. Evid. 1004(1) and 1004(2).

A summary witness may properly testify about, and use a chart to summarize, evidence that has already been admitted. As the Ninth Circuit has recognized, the court and jury are entitled to have a witness "organize and evaluate evidence which is factually complex and fragmentally revealed." <u>United States v. Shirley</u>, 884 F.2d 1130, 1133-34 (9th Cir. 1989)(agent's testimony regarding her review of various telephone records, rental receipts, and other previously offered testimony held to be proper summary evidence, as it helped jury organize and evaluate evidence; summary charts properly admitted); <u>United States v. Lemire</u>, 720 F.2d 1327, 1348 (D.C. Cir. 1983). A summary witness also may rely on the analysis of others as the use of others in

the preparation of summary evidence goes to the weight and not the admissibility of the evidence.  United States v. Soulard, 730 F.2d 1292, 1299 (9th Cir. 1984); see Diamond Shamrock Corp. v. Lumbermens Mutual Casualty Co., 466 F.2d 722, 727 (7th Cir. 1972) ("It is not necessary . . . that every person who assisted in the preparation of the original records or the summaries be brought to the witness stand.").

B.   ADMISSIBILITY OF WITNESS TESTIMONY

     1.   Direct and Adopted Admissions by Party Opponent

     A statement is not hearsay, but rather constitutes an admission by a party opponent, if the statement is offered against a party and is the party's own statement in either an individual or representative capacity.  Fed. R. Evid. 801(d)(2)(A); United States v. Burreson, 643 F.2d 1344, 1349 (9th Cir. 1981).  Similarly, a statement made by a party-opponent and offered against that party is not hearsay if it is a "statement of which the party has manifested an adoption or belief in its truth."  Fed. R. Evid. 801(d)(2)(A).  With respect to adoptive admissions, the Court must find sufficient foundational facts that a jury could reasonably conclude that the defendant actually heard, understood, and acceded to the statements.  Ospina, 739 F.2d at 451 (writings in residence of defendant and acted upon by defendant are adoptive admissions and therefore non-hearsay); United States v. Valles-Vallencia, 811 F. 2d 1232, 1237 (9th Cir. 1987) (handwriting on ledgers are adoptive admissions).

46

When the government admits a portion of a defendant's prior statement under Rule 801(d)(2)(A), the defendant may not put in additional out-of-court statements by him because such statements are hearsay when offered by the defendant.  Fed. R. Evid. 801(d)(2); United States v. Nakai, 413 F.3d 1019, 1022 (9th Cir. 2005) (recognizing that exculpatory out-of-court statements that a defendant makes to a witness constitute inadmissible hearsay) (citing Williamson v. United States, 512 U.S. 594, 598-601 (1994)); United States v. Ortega, 203 F.3d 675, 681-82 (9th Cir. 2000) (defendant prohibited from eliciting his own exculpatory statements during cross-examination of government agent because to permit otherwise would be to put such statements "before the jury without subjecting [defendant] to cross-examination, precisely what the hearsay rule forbids.");  United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988)(same).

The only potential limitation of this principle is the "rule of completeness" set forth in Federal Rule of Evidence 106, which has been applied by some courts to require that all of a defendant's prior statements be admitted where it is necessary to place an admitted statement in context or to avoid misleading the trier of fact.  It is entirely proper, however, to admit segments of a statement without including everything, and adverse parties are not entitled to offer additional statements just because they are there and the proponent has not offered them.  United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996); United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982).  Furthermore, Rule 106

does not render admissible evidence which is otherwise inadmissible under the hearsay rules.  See Collicott, 92 F.3d at 983 (hearsay not admitted regardless of Rule 106).

   2.   Confession of a Co-Defendant/Crawford & Bruton
        Considerations

   While a defendant's own admissions may be offered against him under Rule 801(d)(2)(A), a defendant is deprived of his Sixth Amendment right to confrontation when a non-testifying co-defendant's confession that implicates the defendant is introduced in a joint trial, even if the jury is instructed to consider that confession only against the co-defendant.  Bruton v. United States, 391 U.S. 123, 135-36, 88 S.Ct. 1620, 20 L.Ed. 2d 476 (1968).  However, a mutually inculpatory confession by a non-testifying defendant can be introduced in a joint trial provided that a proper limiting instruction is given and "the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence."  Richardson v. Marsh, 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed. 2d 176, 188 (1987).  In addition, a confession by a non-testifying co-defendant may properly be considered by the trier of fact if it does not expressly implicate another defendant but rather becomes incriminating only after it is linked with other evidence introduced at trial.  Id. at 208-09.

   In Crawford v. Washington, 541 U.S. 36, 53-54 (2004), the Supreme Court distinguished between "testimonial" and "nontestimonial" hearsay evidence and held that the admission of "testimonial" hearsay statements violates the Confrontation

48

1    Clause unless the declarant is unavailable and the defendant had

2    a prior opportunity to cross-examine the declarant.  Crawford

3    further held that co-conspirator statements are not testimonial

4    in nature.  541 U.S. at 74.  The Ninth Circuit has also

5    reiterated that "co-conspirator statements are not testimonial

6    and therefore beyond the compass of Crawford's holding."  United

7    States v. Allen, 425 F.3d 1231, 1235 (9th Cir. 2005), citing

8    Crawford, 541 U.S. at 68 (describing "statements in furtherance

9    of conspiracy" as "statements that by their nature [are] not

10   testimonial"); see also United States v. Bridgeforth, 441 F.3d

11   864, 869 (9th Cir. 2006)("[I]f a statement is admissible under

12   Rule 801(d)(2)(E), the defendant's right of confrontation is not

13   violated.").  Thus, co-conspirator statements are exempted from

14   the Crawford analysis.  They are also exempted from the Bruton

15   analysis: "Bruton precludes the admission of a defendant's

16   confession implicating a co-defendant during a joint trial."  425

17   F.3d at 1235 n.5.  A "statement made by a co-conspirator during

18   and in furtherance of the conspiracy and thus [is] not barred by

19   Bruton."  Id.  See also United States v. McCown, 711 F.2d 1441,

20   1448 (9th Cir. 1983) (holding Bruton inapplicable to statements

21   made by a co-conspirator in furtherance of a conspiracy).

22       3.   Expert Testimony

23       If specialized knowledge will assist the trier of fact in

24   understanding the evidence or determining a fact in issue, a

25   qualified expert witness may provide opinion testimony on the

26   issue in question.  Fed. R. Evid. 702.  An expert may provide

27

28                              49

1  opinion testimony even if it embraces an ultimate issue to be

2  decided by the trier of fact.  Fed. R. Evid 704; <u>Fleishman</u>, 684

3  F.2d at 1335.

4      Courts repeatedly have upheld the admission of expert

5  testimony regarding the alleged RICO enterprise and a defendant's

6  nexus to that enterprise.  <u>See, e.g., United States v.</u>

7  <u>Lombardozzi</u>, 491 F.3d 61, 72-76 (2d Cir. 2007).[5]

8      Similarly, courts frequently have upheld testimony of lay

9  witnesses and related evidence identifying defendants as members

10 or associates of the RICO enterprise as well as other evidence

11 about the enterprise to prove the alleged RICO enterprise, the

12 threat of continuing unlawful activity, background to the charged

13 offenses, and for other purposes.  <u>See, e.g., United States v.</u>

14 <u>Gardiner</u>, 463 F.3d 445, 468 (6th Cir. 2006).[6]

15 _____

16   [5] <u>See also</u> <u>Matera</u>, 489 F.3d at 121-22; <u>United States v.</u>
   <u>Tocco</u>, 200 F.3d 401, 417-19 (6th Cir. 2000); <u>United States v.</u>
17 <u>Saccoccia</u>, 58 F.3d 754, 774-76 (1st Cir. 1995); <u>United States v.</u>
   <u>Locascio</u>, 6 F.3d 924, 936-939 (2d Cir. 1993); <u>United States v.</u>
18 <u>Long</u>, 917 F.2d 691, 701-03 (2d Cir. 1990); <u>United States v.</u>
   <u>Pungitore</u>, 910 F.2d 1084, 1148-1149 (3d Cir. 1990), <u>cert. denied</u>,
19 500 U.S. 915 (1991); <u>United States v. Angiulo</u>, 897 F.2d 1169,
   1187-90 (1st Cir. 1990); <u>United States v. Angiulo</u>, 847 F.2d 956,
20 973-75 (1st Cir. 1988); <u>United States v. Daly</u>, 842 F.2d 1380,
   1387-89 (2d Cir. 1988); <u>United States v. Riccobene</u>, 709 F.2d 214,
21 230-31 (3d Cir.), <u>cert. denied</u>, 464 U.S. 849 (1983).  Thus, in
   RICO cases, courts have upheld admission of expert testimony
22 concerning the structure and nature of organized crime groups,
   their terminology, rules and modus operandi.  <u>See, e.g.,</u>
23 <u>Lombardozzi</u>, 491 F.3d at 72-76; <u>Locascio</u>, 6 F.3d at 937-39;
   <u>Pungitore</u>, 910 F.2d at 1148-49; <u>Angiulo</u>, 897 F.2d at 1187-90;
24 <u>Angiulo</u>, 847 F.2d at 973-75.

25   [6] <u>See also United States v. Reifler</u>, 446 F.3d 65, 90-93 (2d
26 Cir. 2006); <u>United States v. Russo</u>, 302 F.3d 37, 43 (2d Cir.
   2002); <u>United States v. DiSalvo</u>, 34 F.3d 1204, 1213-14 (3d Cir.
27 1994); <u>United States v. Van Dorn</u>, 925 F.2d 1331, 1337-39 (11th

28                              50

4.   <u>Opinion Testimony of Non-Experts</u>

Federal Rule of Evidence 701 allows lay witnesses to provide opinion testimony as follows:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702.

To that end, an experienced government agent may provide opinion testimony even if that opinion is based in part on information from other agents familiar with the issue.  <u>United States v. Andressan</u>, 813 F.2d 1450, 1458 (9th Cir. 1987); <u>United States v. Golden</u>, 532 F.2d 1244, 1248 (9th Cir. 1976).  An experienced government agent also may testify as to his opinions and impressions of what he observed.  As the court stated in <u>United States v. Skeet</u>, 665 F.2d 983, 985 (9th Cir. 1982), "opinions of non-experts may be admitted where the facts could not otherwise be adequately presented or described to the jury in such a way as to enable the jury to form an opinion or reach an intelligent conclusion."

---

Cir. 1991); <u>United States v. Scarpa</u>, 913 F.2d 993, 1011-13 (2d Cir. 1990); <u>United States v. Caliendo</u>, 910 F.2d 429, 435-36 (7th Cir. 1990); <u>United States v. Salerno</u>, 868 F.2d 524, 534-38 (2d Cir. 1989); <u>United States v. Scopo</u>, 861 F.2d 339, 347-48 (2d Cir. 1988).

51

5.    <u>Hearsay</u>

    a.    <u>Definition</u>

    Federal Rule of Evidence 801(c) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).

    b.    <u>Statements Not Introduced for the Truth of the Matter Asserted (e.g., Effect on Hearer)</u>

    Statements offered for the effect they have on the hearer (<u>e.g.</u>, to show a party's knowledge) are not hearsay.  <u>United States v. Castro</u>, 887 F.2d 998, 1000 (9th Cir. 1987); <u>Orsini v. O/S Seabrooke O.N.</u>, 247 F.3d 953, 960 n.4 (9th Cir. 2001).  A witness also may testify to what he or she understood a declarant to mean with respect to a statement made by the declarant to the witness.  <u>United States v. Brooks</u>, 473 F.2d 817, 818 (9th Cir. 1973) (per curiam).

    c.    <u>State of Mind Exception</u>

    Federal Rule of Evidence 803(3) provides that the hearsay rule does not exclude a "statement of the declarant's then existing state of mind."  Fed. R. Evid. 803(3).  The three factors bearing on the foundational inquiry on admissibility under Federal Rule of Evidence 803(3) are contemporaneousness, chance for reflection, and relevance.  <u>United States v. Miller</u>, 874 F.2d 1255, 1264 (9th Cir. 1989) (upholding exclusion of defendant's statement about his state of mind two hours prior to the statement because of chance for reflection and opportunity to fabricate).

1              d.    Prior Inconsistent Statements

2           Prior inconsistent statements of a non-defendant witness are

3     admissible for impeachment purposes under Federal Rule of

4     Evidence 613.  See Fed. R. Evid. 613(a), (b).  In addition, such

5     statements are admissible as substantive evidence offered for the

6     truth of the matter asserted provided that the foundational

7     requirements set forth in Federal Rule of Evidence 801(d)(1) are

8     satisfied.  United States v. Armijo, 5 F.3d 1229, 1232 (9th Cir.

9     1993).  Under Rule 801(d)(1), a statement is not hearsay if

10    "[t]he declarant testifies at the trial or hearing and is subject

11    to cross-examination concerning the statement, and the statement

12    is inconsistent with the declarant's testimony, and was given

13    under oath subject to the penalty of perjury at a trial, hearing,

14    or other proceeding, or in a deposition."  Fed. R. Evid.

15    801(d)(1).

16             e.    Prior Consistent Statements

17           Under Federal Rule of Evidence 801(d)(1)(B), an out-of-court

18    statement is not hearsay if the declarant testifies at the trial

19    and is subject to cross-examination concerning the statement, and

20    the statement is "consistent with the declarant's testimony and

21    is offered to rebut an express or implied charge against the

22    declarant of recent fabrication or improper influence or motive."

23    Rule 801(d)(1)(B); see United States v. Bao, 189 F.3d 860, 864

24    (9th Cir. 1999); United States v. Frederick, 78 F.3d 1370, 1377

25    (9th Cir. 1996);  United States v. Stuart, 718 F.2d 931, 934 (9th

26    Cir. 1983).  However, "[p]rior consistent statements may not be

27

28                                53

1  admitted to counter all forms of impeachment or to bolster the

2  witness merely because [the witness] has been discredited . . . .

3  The Rule speaks of a party rebutting an alleged motive, not

4  bolstering the veracity of the story told." Tome v. United

5  States, 513 U.S. 150, 157-58, 115 S.Ct. 696, 701-02, 130 L.Ed. 2d

6  574, 582-83 (1995). For example, in Tome, the Supreme Court held

7  "that prior consistent statements made after the date of the

8  alleged motivation to lie are inadmissible." Frederick, 78 F.3d

9  at 1377; see Tome, 513 U.S. at 167.

10     To establish the admissibility of a prior consistent

11  statement under Rule 801(d)(1)(B), the following foundational

12  factors must be satisfied: "(1) the declarant must testify at

13  trial and be subject to cross-examination; (2) there must be an

14  express or implied charge of recent fabrication or improper

15  influence or motive of the declarant's testimony; (3) the

16  proponent must offer a prior consistent statement that is

17  consistent with the declarant's challenged in-court testimony;

18  and, (4) the prior consistent statement must be made prior to the

19  time that the supposed motive to falsify arose." Collicott, 92

20  F.3d at 979.

21     6.  Hostile Witnesses

22     The government may seek permission to use leading questions

23  in addressing certain witnesses who have close ties to, or who

24  otherwise are aligned with, certain defendants. Under Federal

25  Rule of Evidence 611(c), "when a party calls a hostile witness,

26  an adverse party, or a witness identified with an adverse party,

27

28                                54

interrogation may be by leading questions."  Although prior to

Rule 611(c)'s adoption, a party wishing to ask leading questions

on direct examination had to show "actual hostility" by the

witness or that the witness was an adverse party, Rule 611(c)

"significantly enlarged the class of witnesses presumed hostile,

and therefore subject to interrogation by leading questions

without further showing of actual hostility."  Haney v. Mizell

Memorial Hosp., 744 F.2d 1467, 1477-78 (11th Cir. 1984) (internal

quotation marks omitted).  A trial court has broad discretion in

determining whether a particular witness should be deemed a

hostile witness for purposes of this rule.  See United States v.

Goode, 814 F.2d 1353, 1355 (9th Cir. 1987).

> 7.   Witness Invocation of the Fifth Amendment Right Against
>       Self-Incrimination

The Fifth Amendment provides that "[n]o person . . . shall

be compelled in any criminal case to be a witness against

himself."  U.S. CONST. Amend. V.  The Fifth Amendment protects a

defendant from making statements that are: (1) compelled; (2)

testimonial; and (3) self-incriminating.  The Supreme Court has

held that compelled testimony, such as sworn trial testimony, is

self-incriminating if reasonable cause exists to believe that the

testimony either would support a conviction or would provide a

link in the chain of evidence leading to a conviction.  United

States v. Hoffman, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed.

1118, 1123 (1951).  If, however, the threat of future prosecution

is "remote, unlikely or speculative, the privilege does not

apply."  United States v. Antelope, 395 F.3d 1128, 1134 (9th Cir.

1  2005) (citing <u>Brown v. Walker</u>, 161 U.S. 591, 596-97 (1896), for

2  proposition that Fifth Amendment protection does not properly

3  extend to offenses for which the statute of limitations has run);

4  <u>see also</u> <u>United States v. Vavages</u>, 151 F.3d 1185, 1192 (1998)

5  (noting that "fear of perjury can typically form a valid basis

6  for invoking the Fifth Amendment only where the risk of

7  prosecution is for perjury of the witness' past testimony" and

8  finding "a witness may not claim the privilege of the Fifth

9  Amendment out of fear that he will be prosecuted for perjury for

10 what he is about to say.  The shield against self-incrimination

11 in such a situation is to testify truthfully, not to refuse to

12 testify on the basis that the witness may be prosecuted for a lie

13 not yet told.").

14      Non-defendant witnesses cannot avoid testifying at trial

15 through a blanket invocation of the Fifth Amendment privilege

16 against self-incrimination.  <u>Antelope</u>, 395 F.3d at 1134.

17 Instead, in instances in which the witness has provided the

18 government with advance notice of the intent to invoke the Fifth

19 Amendment privilege against self-incrimination, the witness

20 should be questioned on the stand, but outside the presence of

21 the jury, to determine whether the invocation is appropriate.

22 <u>Vavages</u>, 151 F.3d at 1192.  Moreover, in the event that a non-

23 defendant witness properly invokes the Fifth Amendment, the

24 government can compel the witness to testify through the issuance

25 of use immunity to that witness.  <u>U.S. v. Doe</u>, 125 F.3d 1249,

26 1252, 1254 (9th Cir. 1997).

27

28                                    56

1        9.   Cross-Examination of Defendant

2        A defendant who testifies at trial waives his right against

3    self-incrimination and subjects himself to cross-examination

4    concerning all matters reasonably related to the subject matter

5    of his testimony.  See, e.g., Fitzpatrick v. United States, 178

6    U.S. 304, 314-315, 91 S.Ct. 1454, 1472, 28 L.Ed. 711, 730 (1971)

7    ("The defendant cannot assert a self-incrimination privilege "on

8    matters reasonably related to the subject matter of his cross-

9    examination."); McGautha v. California, 402 U.S. 183, 215 (1971),

10   vacated in part on other grounds 408 U.S. 941 (1972).  The scope

11   of a defendant's waiver is co-extensive with the scope of

12   relevant cross-examination.  United States v. Cuozzo, 962 F.2d

13   945, 948 (9th Cir. 1992); United States v. Black, 767 F.2d 1334,

14   1341 (9th Cir. 1985) ("What the defendant actually discusses on

15   direct does not determine the extent of permissible cross-

16   examination or his waiver.  Rather, the inquiry is whether 'the

17   government's questions are reasonably related' to the subjects

18   covered by the defendant's testimony").

19       While Federal Rule of Evidence 404(b) "restricts the use of

20   evidence solely for purposes of demonstrating a criminal

21   proclivity, [i]t does not proscribe the use of other act evidence

22   as an impeachment tool during cross-examination."  United States

23   v. Gay, 967 F.2d 322, 328 (9th Cir. 1992).  Furthermore, Federal

24   Rule of Evidence 609(a) permits the credibility of a defendant to

25   be impeached by evidence of felony convictions of the defendant

26   or any crimes involving dishonesty or false statements, provided

27

28                                    57

that the conviction was sustained or the defendant was released

from prison on the conviction within the past ten years.

10.   Cross Examination - General Witnesses

Under Federal Rule of Evidence 608, the credibility of a

witness may be supported or attacked by evidence in the form of:

(1) conviction for crimes involving dishonesty or false

statements, provided that the conviction was sustained or the

defendant was released from prison on the conviction within the

past ten years; (2) prior felony convictions, provided that the

conviction was sustained or the defendant was released from

prison on the conviction within the past ten years; and (3)

opinion or reputation testimony provided that the testimony

refers only to the witness' character for truthfulness or

untruthfulness.   Fed. R. Evid. 608.   Moreover, reputation or

opinion evidence relating to truthfulness may be admitted only if

the witness' character for truthfulness has been attacked.   Fed.

R. Evid. 608(a).   Similarly, specific instances of conduct of a

witness may, in the court's discretion, be inquired into on

cross-examination of the witness only if the conduct concerns his

character for truthfulness or untruthfulness.   Such conduct,

however, may not be proved by extrinsic evidence.   Fed. R. Evid.

608(b).

11.   Defendant's Character Witnesses

The Supreme Court has recognized that character evidence –

particularly cumulative character evidence – has weak

probative value and great potential to result in confusion of the
issues and prejudice the jury.  <u>Michelson v. United States</u>, 335
U.S. 469, 480, 486 (1948).  The Supreme Court has thus given
trial courts wide discretion to limit the presentation of
character evidence.  <u>Id.</u> at 486.

Rule 404(a) of the Federal Rules of Evidence governs the
admissibility of character evidence.  Rule 404(a) permits a
defendant to introduce evidence of a "pertinent" trait of
character.  For example, evidence of defendant's family or
employment status is irrelevant to whether defendant is
believable and law-abiding, and is thus inadmissible.  <u>See</u> <u>United</u>
<u>States v. Santana-Camacho</u>, 931 F.2d 966, 967-68 (1st Cir. 1991)
(testimony of defendant's daughter purportedly showing that
defendant was a good family man was inadmissible character
evidence inasmuch as such character traits were not pertinent to
charged crime of illegally bringing aliens into the United
States).

Moreover, the <u>form</u> of the proffered character evidence must
be proper.  Federal Rule of Evidence 405(a) sets forth the sole
methods by which character evidence may be introduced.  It
specifically states that where evidence of a character trait is
admissible, proof may be made in two ways: (1) by testimony as to
reputation; and (2) by testimony as to opinion.  Thus, defendant
may not introduce specific instances of his good conduct through
the testimony of others.  <u>Michelson</u>, 335 U.S. at 477 ("The
witness may not testify about defendant's specific acts or

59

courses of conduct or his possession of a particular disposition or of benign mental and moral traits.").

On cross-examination of a defendant's character witness, however, the government may inquire into specific instances of a defendant's past conduct relevant to the character trait at issue. <u>See</u> Fed. R. Evid. 405(a).  In particular, a defendant's character witnesses may be cross-examined about their knowledge of the defendant's past crimes, wrongful acts, and arrests.  <u>See</u> <u>Michelson</u>, 335 U.S. at 481.  The only prerequisite is that there must be a good-faith basis that the incidents inquired about are relevant to the character trait at issue.  <u>See</u> <u>United States v.</u> <u>McCollom</u>, 664 F.2d 56, 58 (5th Cir. 1981).

> 12.  <u>Defendant's Testimony Regarding Character/Impeachment</u>
>      <u>by Contradiction</u>

Unlike character witnesses, who must restrict their testimony to opinion or appraisal of a defendant's reputation, a defendant-witness may cite specific instances of conduct as proof that he possessed a relevant character trait.  <u>United States v.</u> <u>Giese</u>, 597 F.2d 1170, 1190 (9th Cir. 1979).  However, "[o]nce a witness (especially a defendant-witness) testifies as to any specific fact on direct testimony, the trial judge has broad discretion to admit extrinsic evidence tending to contradict the specific statement, even if such statement concerns a collateral matter in the case."  <u>Id.</u> at 1190 (citation omitted).  Thus, if defendant testifies to specific instances of conduct supportive of good character, he opens the door to rebuttal evidence on all

1  reasonably related matters, be they "collateral" or not.[7]  <u>Giese</u>,

2  597 F.2d at 1190.

3  C.    <u>MISCELLANEOUS</u>

4        1.    <u>Judicial Notice</u>

5        Federal Rule of Evidence 201 provides that, if requested by

6  a party and supplied with the necessary information, a court must

7  take judicial notice of facts that are not subject to reasonable

8  dispute in that they are either (1) generally known within the

9  territorial jurisdiction of the trial court or (2) capable of

10 accurate and ready determination by resort to sources whose

11 accuracy cannot reasonably be questioned.   Judicial notice may be

12 taken at any stage of the proceedings.   For example, the Ninth

13 Circuit has ruled that materials from proceedings in another

14 tribunal are appropriate for judicial notice under Federal Rule

15 of Evidence 201.   <u>See Biggs v. Terhune</u>, 334 F.3d 910, 916 n.3

16 (9th Cir. 2003) (court shall instruct the jury that it may, but

17 is not required to, accept as conclusive any fact judicially

18 noticed).

19

20

21  _____

22        [7]     The distinction between the proper use of extrinsic
    evidence to impeach by contradiction under Rule 607 and the
23  impermissible use of extrinsic evidence under Rule 608 was
    explained by the Ninth Circuit in <u>United States v. Castillo</u>, 181
24  F.3d 1129 (9th Cir. 1999).   As the <u>Castillo</u> court noted, Rule
    608(b) prohibits the use of extrinsic evidence of conduct to
25  impeach a witness' credibility in terms of his general veracity.
    In contrast, the concept of impeachment by contradiction permits
26  courts to admit extrinsic evidence that specific testimony is
    false, because contradicted by other evidence.
27

28                              61

2.   <u>Reciprocal Discovery</u>

The government repeatedly has requested reciprocal discovery
from defendants.  With the exception of minimal discovery related
to expert testimony defendant Vladimir Iraheta intends to present
at trial, the government has received no other discovery in this
case.  To the extent that there exists reciprocal discovery to
which the government is entitled under Rules 16(b) and 26.2 of
the Federal Rules of Criminal Procedure and which the defense has
not produced prior to trial, the government reserves the right to
seek to have such documents precluded should a defendant attempt
to introduce or use them at trial.  <u>See United States v. Young</u>,
248 F.3d 260, 269-70 (4th Cir. 2001) (upholding exclusion under
Rule 16 of audiotape evidence defendant did not produce in
pretrial discovery where defendant sought to introduce audiotape
on cross-examination of government witness not for impeachment
purposes, but as substantive "evidence in chief" that someone
else committed the crime).

3.   <u>Waiver of Rule 12(b) Motions</u>

Federal Rule of Criminal Procedure 12(b)(3) requires that
defenses and objections based on defects in the institution of
the prosecution, defenses and objections based on defects in the
indictment or information, motions to suppress evidence, and
requests for discovery under Rule 16 be raised prior to trial.  A
defendant's failure to raise any such motions prior to trial
constitutes waiver, and the Court should not allow any such
motions to be brought after jeopardy has attached.  Fed. R. Crim.
Pro. 12(e); <u>United States v. Quintero-Barraza</u>, 78 F.3d 1344, 1348

1  (9th Cir. 1996); <u>United States v. Miller</u>, 984 F.2d 1028 (9th Cir.

2  1993).

3  DATED: February 29, 2012          Respectfully submitted,

4                                    ANDRÉ BIROTTE JR.
                                      United States Attorney

5
                                      ROBERT E. DUGDALE

6                                     Assistant United States Attorney
                                      Chief, Criminal Division

7

8                                     _____/s/_____
                                      KEVIN M. LALLY

9                                     NILI T. MOGHADDAM
                                      CAMERON L. SCHROEDER

10                                    Assistant United States Attorneys

11                                    Attorneys for Plaintiff
                                      United States of America

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                          103